Good morning, Your Honors. May it please the Court, Maliha Hugg on behalf of Petitioners Kaur and Singh. In these pre-real ID cases, petitioners submit that the record compels reversal of the agency's decision to deny their applications for asylum withholding and CAT protection. In this case, as Your Honors know, there is a motion pending for mediation, and it was not filed by the petitioners, although it was unopposed by us. We believe the — I did not oppose it because we thought that we could narrow some of the issues down. I would like to hear actually from the Respondent, and then if I could just reserve my time as to why they had thought it necessary to file this motion. Well, we'll take that up at conference, but why don't you argue the merits of your case?  I can do that, Your Honor. As for the case of Baljinder, we believe that no reasonable fact-finder could find that Baljinder was not credible. The I.J. made boilerplate language — sorry, excuse me. The I.J. made a divina finding which used boilerplate language and which is not allowed under this — the precedent of this Court and should not be deferred to by this panel. The I.J. in also finding her not credible chose and kind of made an inconsistency about whether bribes were paid to release her when there was no inconsistency in that particular — in that particular point. She — her application has said that bribes were paid for her two arrests and her father's second arrest, and her testimony reflected the same. And she testified only that she was not sure whether a bribe was paid to release her father after his first arrest. She never said that she was not sure whether a bribe was paid for her own release, as the I.J. erroneously stated. Moreover, her testimony was consistent regarding the amount of mistreatment she faced. Any confusion regarding exactly what happened in her two arrests is understandable given the time since they had happened, which they happened in March of 97 and February of 98, and she was testifying about them in March of 2007. Sotomayor, can you clarify that for me? Was Carr sexually harassed during one or both of her arrests? I believe, Your Honor, that it was one of her arrests, that that is what she had testified to. And regarding — she was also, as the panel knows, reluctant to describe the details of exactly what the sexual harassment entailed. But — and there was some discussion, I would say almost surreal discussion, about exactly whether — what kind of touching constitutes sexual touching. However, we — we would submit that she was sexually harassed, if not sexually assaulted, in prison, and that goes to the past persecution part of her case. What's your best case that supports that what Carr endured constitutes persecution? Your Honor, she — we have to look at the cumulative effect of incidents that she had to deal with. She was arrested on two occasions without a warrant. She was held for two and five days, respectively. She was beaten with sticks and belts. She was slapped. She was called names. She was sexually harassed and threatened. Her father was unlawfully arrested twice and disappeared. And there — and the cumulative effect of that certainly, we believe, constitutes persecution. And the other — What case can you point to? I mean, is there a particular case that you think is aligned with the — that supports what you just said? Your Honor, I believe that — Because it seems like a lot of the cases have more extreme conduct or more — Your Honor, I don't have a particular case with analogous effects. I read off the tip of my tongue right now, but I would just submit that the I.J. and the B.I. also did not take into account the psychological terror of being in control of these police officers and knowing that things could escalate even further. You know, it could have led to rape. It's something that was not — Do you have a case that supports that, what you just said, that that would constitute persecution? I don't have a — I don't have a case, Your Honor. I don't. Not right now. Sorry. But we — but under Gorman-Levy-Ashcroft, there — this Court has held that the cumulative effect of incidents can be taken into account in noting whether somebody — whether a Petitioner has — has faced past persecution. And, indeed, we — I'm sorry. Just coming back to credibility now, the only other issue noted by the I.J. regarding credibility was differences in dates on her passport, which I believe was not relevant in any way to any part of her claim. And the I.J. also made an issue about what — he doesn't have any evidence that the father has actually disappeared, but if her presumption of future persecution, which has not been rebutted with any particular lies — with any particular manner by the I.J. or the Board in this case. I would like to now go to the case of Singh, which, as the panel knows, has different — entirely different facts. Now — It seems to me you've got a tougher road with Mr. Singh because, in fact, he had no political involvement for a long period of time and left the A-S-S-I-F — or A-I-S-S-F. So how do you respond to the agency's finding on that? I'm sorry. The finding regarding — Well, they found him not credible and also noted that he hadn't been an active member of the organization for some time. Yes, Your Honor. Well, Your Honor, we believe that the credibility — we believe that no reasonable fact finder could find that he was not credible and that he did establish that fact. Well, why is that? I mean, they point to all kinds of inconsistencies identified as multiple material inconsistencies between his application interview and his testimony, and there are some. Yes, Your Honor. There are some alleged inconsistencies, but I believe that all of them — Well, they're not alleged. They are. I mean, do you think that this is all consistent? Well, Your Honor, there are some inconsistencies. However, we believe that they are not material enough or go to the heart of his claim such that we believe that he should be found. You know, I mean, we worry about boilerplate language. With all respect, that's kind of a boilerplate argument, isn't it? Yes, Your Honor. I mean, you have to — why aren't they? I mean, you know what they are. I mean, the arrests were different. The parents were involved. The duration of the arrest, the key events on which he hinges his claim of persecution, those are inconsistent. Your Honor, when — so I can — I can — if Your Honor will allow, I can address them. I believe that they have been addressed in the briefs, but I can address them again. As far as the date when his membership ended, the I.J. said that Petitioner first testified that his membership in A.I.S.S.F. ended in August of 1995, or he testified before the Asylum Office that it was in December of 1995. Now, there's some inconsistency noted between the Asylum Office and what he's testified before the Court, but he, Petitioner, noted repeatedly that there were — might have been translation errors in his interviews with the Asylum Office. Well, might have been doesn't get you anywhere because there's been a finding  Yes, Your Honor. However — Well, see, you know, he testified that his final arrest occurred on December 16, 1995, and lasted four days. But in his interview, he said that the — he's talked about different dates and different durations of detention. And, I mean, this is sort of the hallmark of people who are sort of on the fly, and they can't remember what they said one time, and so the next time it changes a little bit. Well, Your Honor, about his — the length of his third arrest, he had, in fact — he never reeled from the fact that his last arrest happened in December of 1995. Yeah, but gave different dates and different durations. Yes, Your Honor. And in court, he actually lessened the duration. He said that he — it was four days and then — rather than eight days, as he has said in the Asylum Office. See, he's all over the lot on something that goes to the heart of the claim. Yes, Your Honor. Well, even — even noting the fact that he might not have been credible, we believe that even — that he — he would be subject to future persecution in this — in this situation, even if he had not been involved in the Asylum Office for so long. And, Your Honor, I think I'm running out of time, and I'd like to reserve the rest of the time. All right. Thank you. Very good. We'll hear from the government. Okay. May it please the Court. Melissa Nyman, Kelting, for the Attorney General. Would you mind moving the microphone up just a little bit? Yes, Your Honor. Thank you. I understand from Your Honor's comments earlier that you would not prefer to discuss the pending motion right now, and you would prefer it here. No, you can go ahead and argue it. That's fine. Okay. I just said we were going to take — we'll take up the motion at conference so that — I just thought we want a merits argument. Of course, I understand, and I'm prepared to discuss that as well, Your Honor. I just wanted to — to sort of explain a little further the government's reasoning for filing the late-in-the-game motion to refer these cases to mediation. In reviewing these cases, it — there was some concern raised, especially as to Ms. Cower, that there are some problems with the credibility finding that the agency — So you're conceding error? There are — there are two factual errors in the IJ's decision. So you're conceding that the credibility finding was — is not supported by the record? Under this Court's case law, Your Honor, it would be difficult for me to stand here and argue to you that it is. And we do have an alternative merits finding in part as to Ms. Cower. The IJ did appear to say that she, even if credible, did not establish past persecution but made no independent well-founded fear finding. It was all argued to the Board, although I would point out that the credibility grounds were not sufficiently exhausted the way they have been argued to this Court. But certainly the issue of credibility was raised, just not to the level of specificity that it has been discussed before the Court. So you — but you want both cases referred to mediation? Well, there's a — Because of the familial relationship. Well, they've been consolidated for some reason, even though they are tied into entirely different claims. But there are some concerns with Mr. Singh's case as well. But — Well, you know, I mean, what are you talking about? There are some concerns. What? What's the problem? Well, I have two concerns, Your Honor, that I came across in preparing these matters for argument was that first — and in fairness and in full disclosure, these have not been raised by either side, so there's — That's all right. Go ahead. Okay. Initially, as to — as everyone is very well aware, Mr. Singh's case has a very long procedural history. It has been back and forth and back and forth. There has never been any VA discussion about the basis of adverse credibility in Mr. Singh's case is one issue. They affirmed without opinion in 2005 when the IJ rendered her second credibility decision. They affirmed without opinion, as they are permitted to do. And when it came back for the CAT hearing, Mr. Singh, in his opinion, argued that — that he would request that the Board revisit the asylum and withholding denials and requested that he could incorporate his arguments from the prior hearing — or, excuse me, from the prior appeal before the Board. The Board acknowledged that he — Go ahead. Oh, I'm so sorry. No, go ahead. The Board acknowledged that he requested that it consider his arguments, but then on his argument. There is some precedent in this Court to suggest that the Board errs when it doesn't address a party's argument. So that's — Well, that's pretty firm precedent, actually. That's pretty firm precedent. And as a matter of disclosure — To put it in the vernacular, you're conceding error there also. Well, I would — I need to tread carefully here, because certainly it is the Petitioner's burden and has not come up from Petitioner's counsel that this was a problem. They went and proceeded to argue both credibility and the merits. Let me ask you this, though, before — there are two paths here, maybe three, but two paths. One is we could send it to the circuit mediator, or we could just do a straight remand so that you can revisit that. And I gather you don't — do you have any preference on that? Because, actually, it doesn't sound like the result of mediation would be anything but a remand, potentially. I think that's right, Your Honor. The purpose of the motion — Right. I mean, you're not talking — usually when we send it to mediation, there might be something, some other reason, like a deferred prosecution in play — That's right. — that would give, under your guidelines, that would — Certainly. — within the discretion of the executive, that the executive may wish to bring up with the mediator. But if I'm understanding your argument today, you're saying you think there are some problems in the case, and the government would like to revisit that before the agency, not the mediator. And that — that is to clarify and address your court — your panel's concern in that there were two reasons for the motion. One was to acknowledge that, in part, there are — there are some insufficiencies with the IJ's decision, at least as to Ms. Cower's case. That's a ground to remand. And I don't quite understand the mediation part of the whole thing. I, for one, am dissatisfied with the results in most of these immigration cases that get sent to mediation. Because the bulk of the cases that I have disappear into mediation, and nothing happens for years. I mean, I have some that are years old that we're hanging on to in our calendar, nothing happens, and then all of a sudden it pops out, whoops, we can't do anything. So to me, when somebody says we want to send this to mediation, it suggests that the government is going to somehow be favorable to the people with whom it's mediating. But, you know, I mean, are you going to go to mediation and say they still should get kicked out? We just want to send it back to the agency? So what's the purpose of sending it to mediation? Why don't we just remand it to the board with your concessions? Start over again. I mean, this case already has whiskers. That is certainly an option, Your Honor. The point of the motion that was at that point, granted, although it was late in the game, was to, as I said, acknowledge that there were some problems in the case, but also to potentially save what limited judicial resources were left to come to bear in this case. Right. It creates a problem for us when either side comes in late with a motion for mediation. Not that we don't appreciate it. We've encouraged the government to mediate the cases, but we prefer it sooner in the game rather than later. Of course. And there are, as you know, recently, because of the new guidance, that there have been a whole lot of requests for mediation based on prosecutorial discretion, not necessarily errors in the judgment. So we've taken those up and the mediators have had some success with that. But, as Judge Trott says, a lot of times it can carry on for years. So it seems to me what you're really up to, you're not objecting to a remand to the agency to address some of these issues. Is that your position? The purpose was, Your Honor, to acknowledge and to maintain candor and credibility with the Court. As far as at least Ms. Cower's case, it seems that under this Court's precedent that adverse credibility finding in light of the factual errors in the I.J.'s decision and the lack of discussion of the mother's affidavit that corroborates the father's disappearances and arrests, which was one basis that the I.J. listed as part of her concern about Ms. Cower's case is that she had no corroborating evidence as to her father's arrests and disappearances. The affidavit was in the record and not discussed. The fact that the Board was not given an opportunity to fully address the arguments that Petitioners now raise in the Administrative Appeal and the fact that there's no full... So I'm trying to interpret what you're saying. Are you asking us for a plenary remand to the BIA almost to start over on some of this stuff at the BIA level? As to Ms. Cower's case, the adverse credibility is the only basis for the asylum denial, and it is not supported by this Court's case law. So the answer to Your Honor's question would be yes. And as to Singh, what? Well, given that the cases were... Unadjudicated motion. I'm sorry. I think you mentioned the unadjudicated motion or request. Request. But if this, again, it was not raised by Petitioner, I would not want the government's position to reflect a plenary remand for Mr. Singh. We are certainly here and prepared to discuss the merits of his case. But in light of the fact that the cases were consolidated and the late timing of the to request mediation in both cases, which Petitioner's counsel did not object to, to sort of narrow the issues and acknowledge that there were some problems with the decisions in the cases. But I think as Judge Trott pointed out, if the Court were interested in proceeding on the merits as to Mr. Singh's petition, certainly the agency decision here in his case as to the credibility was supported by substantial evidence in the record. I think Judge McGee has a question. I have a question. Yes, Your Honor. Assuming, let's just assume for the moment, a coward is credible. Yes, ma'am. Yes, Your Honor. Do you have any – I would like to talk about past persecution, and I asked your colleague if she had any cases that supported the facts in this case do dictate that it should be considered as persecution. Do you have any cases that shed light on why that it shouldn't be considered as persecution, or what she endured was not past persecution? Well, in our brief, Your Honor, certainly we cited Marcoux at page 51 that talked about a situation where this Court found no persecution, excuse me, no past persecution where the individual was beaten to the point of unconsciousness because of listening to Radio Free Europe, threatened by police officers who beat him, and threatened to kill him if he didn't silence himself and confiscated his possessions. Also, Prasad, which is an older case in this circuit that has found – my time is up. May I continue? Sure. That has found that acts more egregious than what Petitioner experienced in this situation were found not to rise to the level of past persecution. Here the I.J. did not cite any precedent, but did make a finding that assuming that she was credible and that the events to which she testified transpired, that she had not established that that conduct rose to the level of persecution as contemplated by the Board and the Court's case law. It sounds like your office is trying to run from pillar to post to cover all of these cases. Pardon me, Your Honor? It sounds like you're overwhelmed with lots of cases. As far as cases in before the – Immigration cases. I mean – There certainly – we certainly are not wanting for work, Your Honor. Yeah. All right. Thank you for your – This Court is more than well aware. But I'm certainly – if the panel has further concerns about the posture or the position of the government in this case, I would be more than happy to file a supplemental brief explaining where we are. We'll let you know if that's necessary. I appreciate Your Honor's time. Thank you so much. We'll hear rebuttal. Thank you, Your Honor. Your Honors, I just have – I just wanted to note that we believe that the Carr's petition actually should be – should be granted by this Court, and that if anything, that the only petition that should be remanded is Mr. Singh's, for the reason being that, as my colleague pointed out, that the BIA did in fact never address the credibility arguments that were in fact raised before it. Did you bring that to us this time around? Your Honor, it was noted in the brief that the BIA – it was noted in the brief that the BIA did not address the credibility arguments that were before it. Did you make that an issue, though, or did you just note it? It was noted, Your Honor. It was not – Not an issue. It was not made an issue. Thank you, Your Honors. All right. Thank you very much for your arguments. The case is here to be submitted.
judges: Trott, Thomas, Murguia